People v Erfurt (2025 NY Slip Op 00247)

People v Erfurt

2025 NY Slip Op 00247

Decided on January 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

111975
[*1]The People of the State of New York, Respondent,
v
Sheryl Erfurt, Appellant.

Calendar Date:December 11, 2024

Before:Garry, P.J., Lynch, Fisher, Powers and Mackey, JJ.

Theresa M. Suozzi, Saratoga Springs, for appellant.
G. Scott Walling, Special Prosecutor, Slingerlands, for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Saratoga County (James A. Murphy III, J.), rendered August 12, 2019, upon a verdict convicting defendant of the crime of driving while intoxicated and the traffic infraction of inadequate or no stop lamps.
In July 2018, a state trooper observed what he believed was a disabled vehicle stopped on the right-hand shoulder of Interstate 87. He activated his emergency lights and pulled behind the vehicle, and then approached to speak with the driver, who was later identified as defendant. In doing so, he detected the strong odor of alcohol and observed defendant's speech to be somewhat impaired. After she indicated that she was confused about where she was and that she had pulled over to check her phone, the trooper asked defendant to step out of the vehicle and administered three standardized field sobriety tests. Defendant failed each test and was arrested. She was then brought to the police station, where she refused to submit to a breath test.
Thereafter, defendant was charged by indictment with driving while intoxicated (see Vehicle and Traffic Law § 1192 [3]) and inadequate or no stop lamps (see Vehicle and Traffic Law § 375 [40] [b]). Defendant moved to suppress certain evidence of her intoxication based on her claim that the trooper did not have probable cause to stop and arrest her, and that she had not been provided her Miranda warnings when she had made certain incriminating statements. County Court denied this motion. Defendant also made Sandoval and Molineux applications, which resulted in a Sandoval compromise, and County Court denied the Molineux application. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant to a prison term of 1 to 3 years for the driving while intoxicated conviction, and a three-year conditional discharge on the inadequate or no stop lamps conviction, to run consecutively to the prison term. Defendant was also subject to the installation of an interlock ignition device for a period of three years following her release from prison. Defendant appeals.
We affirm. Defendant contends that the verdict as to her conviction for driving while intoxicated is not supported by legally sufficient evidence and is against the weight of the evidence.[FN1] As charged here, a person is guilty of driving while intoxicated when he or she "operate[s] a motor vehicle while in an intoxicated condition" (Vehicle and Traffic Law § 1192 [3]). "A driver is intoxicated when he or she has voluntarily consumed alcohol to the extent that he or she is incapable of employing the physical and mental abilities which he or she is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Farnsworth, 134 AD3d 1302, 1304 [3d Dept 2015] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 1068 [2016]). "Generally, a driving while intoxicated verdict must be supported by evidence that the defendant was in an intoxicated [*2]condition when he or she operated the vehicle" (People v Pentalow, 196 AD3d 871, 874 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]).
Defendant argues that the People failed to prove that she was operating the vehicle while intoxicated because she was not observed driving the vehicle nor was there any proof that she was under the influence of alcohol because there was no breathalyzer or blood test to determine her blood alcohol level. We are not persuaded. Although the trooper testified that he initially saw defendant's vehicle stopped on the shoulder, he explained that, as he was pulling behind her vehicle to check on her, defendant started to pull away and then quickly pulled back over to the shoulder again. Then, in getting out to speak with defendant, the trooper further testified that defendant was the driver behind the wheel, that there were no other occupants who could have driven the vehicle, and that defendant had admitted she had driven a stranger home and got onto the Thruway to drive home. Such evidence was, for the purposes of Vehicle and Traffic Law § 1192 (3), sufficient evidence of "operation" of a motor vehicle (see People v Farnsworth, 134 AD3d at 1304). As to defendant's intoxicated state, the trooper, who was trained to administer standardized field sobriety tests and chemical tests, testified that defendant failed all three field tests that he administered to her — including scoring a six out of six possible indicators for the eye test known as the horizontal gaze nystagmus test, a "high indicator of intoxication." He further testified that he detected the smell of alcohol on defendant both when she was in her vehicle and after she had stepped out to perform the field sobriety tests, and that defendant had trouble pronouncing simple words, her explanations did not make sense to him and that she refused to comply with multiple requests to step out of her vehicle. After placing her under arrest and putting her in the front seat of his patrol car, the trooper testified that defendant then exited his car several times after he told her to stay put while he was looking for her phone and performing an inventory check. He also testified that defendant refused to submit to either the preliminary breath test or the breath test at the police station, which she refused three times. This evidence, taken together with the testimony of a taxi driver regarding defendant's statements and demeanor as he took her home from the police station, when viewed in a light most favorable to the People, constituted legally sufficient evidence to establish the driving while intoxicated charge (see People v Pentalow, 196 AD3d at 874-875; People v Caden N., 189 AD3d 84, 94-95 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]).
As to the weight of the evidence, a different verdict would not have been unreasonable given the lack of a breath test analysis and the trooper's testimony that defendant did not have bloodshot or glassy eyes [*3]and was not overly slurring her words. The jury further could have believed defendant's testimony that she had only partially consumed a single 8.5-ounce wine spritzer mixed into a one-liter carton of coconut water earlier that day, and that the smell of alcohol the trooper detected was because the drink had spilled on her clothing and a towel that was in her vehicle. Defendant also testified that she had a bunion/injury to her foot, which impacted her ability to pass the field sobriety tests. However, the jury was entitled to reject portions of defendant's testimony, including how much and when she consumed the alcohol, as well as her reasons for her performance on the field sobriety tests (see People v Sorrell, 196 AD3d 923, 925 [3d Dept 2021], lv denied 37 NY3d 1029 [2021]; People v Colburn, 123 AD3d 1292, 1293-1294 [3d Dept 2014]; lv denied 25 NY3d 950 [2015]). According deference to the jury's credibility determinations, we conclude that defendant's conviction for driving while intoxicated is supported by the weight of the evidence (see People v Pentalow, 196 AD3d at 875; see People v Farnsworth, 134 AD3d at 1304; see also People v Caden N., 189 AD3d at 95).
Next, we find that County Court properly denied defendant's suppression motion. Initially, the branch of defendant's motion contending that the trooper did not have probable cause to stop and arrest her was properly denied, without a hearing, because such application contained only boilerplate allegations and did not provide a sufficient legal basis for suppression (see People v Imes, 226 AD3d 1080, 1082 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]; see also CPL 710.60 [3]; People v Ibarguen, 37 NY3d 1107, 1108 [2021], cert denied ___ US ___, 142 S Ct 2650 [2022]; People v Farnsworth, 134 AD3d at 1303). As to defendant's challenge to certain statements that she made to the trooper before being informed of her Miranda rights, the People satisfied their burden of proving, beyond a reasonable doubt, that defendant's statements were not the product of coercion (see CPL 60.45 [2] [a], [b] [i]; People v Weber, 226 AD3d 1158, 1160 [3d Dept 2024], lv denied 42 NY3d 931 [2024]; People v McCarty, 221 AD3d 1360, 1366 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]). Specifically, the testimony from the suppression hearing revealed that certain statements had been made prearrest and were in response to the lawful encounter with defendant's already-stopped vehicle, including innocuous questions relating to her driver's license, brake light out and reason for being stopped on the side of the highway (see People v Farnsworth, 134 AD3d at 1303; see also People v Reichel, 211 AD3d 1090, 1091-1092 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]). Such testimony confirmed that defendant did not answer whether she had been drinking or how many drinks she may have consumed, and, following her arrest, the trooper did not ask defendant any inculpatory questions — only confirming whether or not she understood the [*4]refusal warnings for not submitting to a breath test (see People v Berg, 92 NY2d 701, 703 [1999]). Based upon our review of the record, we are satisfied that defendant's statements were not a product of coercion and County Court properly denied defendant's motion to suppress (see People v Weber, 226 AD3d at 1160; People v McCarty, 221 AD3d at 1365-1366).
Defendant also contends that County Court abused its discretion in disallowing defendant to cross-examine the trooper regarding his eyesight and recent eye surgery before the incident, given the importance of the officer's observations to proving the People's case. We disagree. Although "[a] criminal defendant is entitled to conduct appropriate cross-examination designed to show a prototypical form of bias on the part of the witness" (People v Alcarez, 141 AD3d 943, 944 [3d Dept 2016] [internal quotation marks and citation omitted], lv denied 28 NY3d 1025 [2016]), it is well-established that "the trial court has broad discretion to limit the scope of cross-examination when the questions are irrelevant or only marginally relevant, concern collateral issues, or pose a danger of misleading the jury" (People v Doane, 212 AD3d 875, 882-883 [3d Dept 2023] [internal quotation marks, brackets and citation omitted], lv denied 39 NY3d 1154 [2023]; see People v Green, 208 AD3d 1539, 1544 [3d Dept 2022]). Here, prior to his testimony, County Court permitted the examination of the trooper outside the presence of the jury relating to his eye condition. Such testimony revealed that, at the time of defendant's arrest, the trooper was between treatments for melanoma in his eyelid, which was removed via surgery. The trooper further explained that the surgery had impacted his vision, but that any blurry vision caused by the procedure was correctable by contact lens, which he was wearing on the date of defendant's arrest. He further testified that he was granted clearance to return to full duty without any limitations after he underwent testing by his surgeon and passed his firearms requalification — which he did with a perfect score of 250 out of 250. Based on the foregoing, County Court properly determined that defendant's request to question the trooper as to his eye condition and surgeries may have misled the jury and, therefore, the probative value of such testimony on cross-examination was greatly outweighed by the undue prejudice (see People v Graham, 215 AD3d 998, 1007 [3d Dept 2023], lv denied 40 NY3d 928 [2023]; see also People v David, 41 NY3d 90, 101 [2023]; People v Doane, 212 AD3d at 883).
Defendant's challenge to the Sandoval compromise is unpreserved because she did not interpose an objection to it by the close of the hearing but, rather, consented to the compromise (see People v Cooper, 199 AD3d 1061, 1064 [3d Dept 2021], lv denied 38 NY3d 926 [2022]). Defendant's contention that County Court improperly allowed the People to introduce evidence of her uncharged traffic infraction for refusing to submit [*5]to a breath test is without merit, as her refusal was "inextricably interwoven" with the charged offense, provided necessary background information as to the arrest, completed the trooper's narrative, and the trial court issued an appropriate limiting instruction prohibiting the People from eliciting testimony that such refusal constituted a violation of the Vehicle and Traffic Law (People v Lewis, 224 AD3d 1143, 1152 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 939 [2024]; see People v Hebert, 218 AD3d 1003, 1010 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]). To the extent that defendant contends that she was denied a fair trial because these issues constitute the ineffective assistance of counsel, we disagree, as "trial counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v Lall, 223 AD3d 1098, 1110 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 41 NY3d 984 [2024]). As to defendant's contention that her trial counsel was also ineffective for failing to call an expert witness to testify as to the impact of her foot condition on her failed field sobriety tests, such contention fails to address defendant's failed eye test that was a "high indicator of intoxication" because she had displayed six out of six indicators or "clues" of intoxication. Moreover, defendant failed to "demonstrat[e] that such testimony was available, that it would have assisted the jury in its determination or that [defendant] was prejudiced by its absence" (People v Werkheiser, 208 AD3d 1474, 1478 [3d Dept 2022] [internal quotation marks and citations omitted]). Based on the totality of the record before us, which demonstrated that defendant's trial counsel made compelling opening and closing remarks, effectively cross-examined witnesses, attempted to properly refocus defendant's direct examination despite her disregard for County Court's rulings, and that he appropriately made objections and motions before and throughout the trial, we are satisfied that defendant received meaningful representation (see People v Lopez, 226 AD3d 1165, 1166-1167 [3d Dept 2024], lv denied 42 NY3d 905 [2024]; People v Lall, 223 AD3d at 1110).
Lastly, defendant's challenge to the sentence is moot as she has finished serving her period of incarceration and the period of time requiring her to use an interlock ignition device after her release has also elapsed (see People v Birch, 228 AD3d 991, 994 n 1 [3d Dept 2024], lv denied 42 NY3d 969 [2024]; People v Cecilio, 65 Misc 3d 148[A], 2019 NY Slip Op 51829[U], *1 [App Term, 1st Dept 2019]). We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Lynch, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Although defendant labels her argument as against the weight of the evidence, her appellate brief primarily borrows language employing a challenge to the legal sufficiency of the evidence. Since it was properly preserved, we interpret defendant's contention to also be challenging legal sufficiency, which, in conducting a review of the weight of the evidence, we nevertheless review to ensure that the People established each element of the charged offense (see People v Farnsworth, 134 AD3d 1302, 1303-1304 [3d Dept 2015], lv denied 27 NY3d 1068 [2016]; see also People v Sorrell, 196 AD3d 923, 923 [3d Dept 2021], lv dismissed 37 NY3d 1029 [2021]).