People v Ambrosio (2026 NY Slip Op 00824)

People v Ambrosio

2026 NY Slip Op 00824

Decided on February 17, 2026

Court of Appeals

Cannataro, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 17, 2026

No. 5 

[*1]The People & c., Respondent,
vJason J. Ambrosio, Appellant.

Matthew C. Hug, for appellant.
Jaime A. Douthat, for respondent.
District Attorneys Association of the State of New York, amicus curiae.

CANNATARO, J.

Defendant was convicted, upon a jury verdict, of driving while ability impaired by a drug (Vehicle and Traffic Law § 1192 [4]) and driving while ability impaired by the combined influence of drugs (id. § 1192 [4-a]). On this appeal, defendant argues that his trial counsel was ineffective for failing to request a jury charge defining impairment by drugs consistent with the Third Department's decision in People v Caden N. (189 AD3d 84 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]), rather than the model jury instructions and this Court's decision in People v Cruz (48 NY2d 419 [1979], appeal dismissed 446 US 901 [1980]). We disagree.
* * *
In People v Cruz, this Court distinguished the crime of driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]) from the crime of driving while intoxicated by alcohol (id. § 1192 [3]) by construing the statutory terms "impaired" and "intoxicated" according to their commonly understood meanings (see Cruz, 48 NY2d at 422, 428). Regarding impairment, we explained that the question is "whether, by voluntarily consuming alcohol, th[e] particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 427 [emphasis added]).
Four decades later, in Caden N., the defendant was convicted of vehicular manslaughter on the theory that he caused death while his ability to operate a motor vehicle was impaired by a drug (see Penal Law §§ 125.13 [4], 125.12 [1]; Vehicle and Traffic Law § 1192 [4]). Although both parties agreed on appeal that Cruz's definition of impairment by alcohol supplied the relevant definition of "impairment" for purposes of the vehicular manslaughter charge, the Third Department determined for itself that a different standard applied, holding that "in the context of [*2]assessing whether a person has committed the crime of vehicular manslaughter in the second degree," impairment by a drug requires "the same degree of impairment as would be necessary to sustain a conviction of driving while intoxicated by alcohol [under Cruz]—namely, the People must prove that such motorist was 'incapable of employing the physical and mental abilities which [a person is] expected to possess in order to operate a vehicle as a reasonable and prudent driver' " (189 AD3d at 90-91, quoting Cruz, 48 NY2d at 428).[FN1]
Defendant in this case was charged with two counts of driving while ability impaired by a drug and one count of driving while ability impaired by a combination of drugs (see Vehicle and Traffic Law § 1192 [4] and [4-a]) based on his operation of a vehicle after having ingested both marijuana and buprenorphine/suboxone. The trial was held within the Third Department approximately one year after Caden N. During the charge conference, defense counsel requested the "standard" jury instructions for the charged offenses. The trial court accordingly instructed the jury on the law using the model criminal jury instructions for subsections 1192 (4) and (4-a), which at the time of defendant's trial employed a definition of impairment by drugs that paralleled Cruz's definition of impairment by alcohol (see CJI2d[NY] Vehicle and Traffic Law § 1192 [4] and [4-a] [rev. January 2008]). Defendant appealed from the resulting judgment of conviction, arguing that his counsel was ineffective for failing to request a jury charge on the meaning of impairment by drugs based on Caden N. The Third Department affirmed, reasoning that "by its own express language," Caden N. applied only "to the crime of vehicular manslaughter" and not "to the underlying crimes of driving while ability impaired by drugs or by a combination thereof" (235 AD3d 1181, 1184-1185 [3d Dept 2025]). Even the dissenting Justice, who authored Caden N., rejected defendant's ineffective assistance claim, stating that "it is difficult to characterize Caden N. as so clear-cut that counsel's failure to request a charge premised on Caden N. was constitutionally ineffective" (see id. at 1188 [Lynch, J., dissenting]).
"To prevail on a claim of ineffective assistance of counsel under our State Constitution, 'a defendant must establish that counsel failed to provide meaningful representation and thus deprived defendant of a fair trial' " (People v Watkins, 42 NY3d 635, 639 [2024], cert denied 145 S Ct 459 [2024], quoting People v Clark, 28 NY3d 556, 562 [2016]). This standard requires an objective assessment of counsel's representation as a whole in light of the evidence, the law, and the circumstances at the time of the representation (see Watkins. 42 NY3d at 639; People v Benevento, 91 NY2d 708, 712 [1998]; People v Baldi, 54 NY2d 137, 147 [1981]). " 'A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial' " (Watkins, 42 NY3d at 640, quoting People v Caban, 5 NY3d 143, 152 [2005]). Such cases are "rare" and typically involve the failure to raise a defense that was "clear-cut and completely dispositive" (People v Turner, 5 NY3d 476, 480-481 [2005]; accord Watkins, 42 NY3d at 640; People v Saenger, 39 NY3d 433, 442 [2023]; see also People v Borrell, 12 NY3d 365, 368-369 [2009] [counsel not ineffective for [*3]failing to raise issue of "uncertain efficacy"], rearg denied 12 NY3d 365 [2009]). Consequently, "counsel is not ineffective when the success of the argument the defendant claims should have been made by counsel depended on the resolution of novel questions, or when, at the time of the defendant's trial, there was no clear appellate authority supporting the argument" (People v Hayward, 42 NY3d 753, 756 [2024] [internal quotation marks and citation omitted]). Indeed, "we have on occasion rejected ineffective assistance challenges when it is clear to the Court that the objection or contention that was omitted would not have been a 'winning argument' leading to appellate reversal of a judgment of conviction and sentence" (People v Keschner, 25 NY3d 704, 723 [2015]). The defendant bears the burden of showing ineffectiveness (Watkins, 42 NY3d at 639).
Defendant argues that Caden N. established a clear right within the Third Department to a jury charge in Vehicle and Traffic Law § 1192 (4) and (4-a) cases that defines impairment by drugs consistent with the higher standard of intoxication by alcohol from Cruz. But as the Third Department itself explained below, the holding and reasoning of Caden N. were carefully limited to the statutory scheme for vehicular manslaughter, and at the time of defendant's trial, no court in this State had extended the reasoning of Caden N. to charges under Vehicle and Traffic Law § 1192 (4) or (4-a) (see 235 AD3d at 1184-1185). Further, the model jury instructions—on which this Court has advised both counsel and trial courts to rely (see e.g., People v J.L., 36 NY3d 112, 122-123 [2020]; People v Cubino, 88 NY2d 998, 1000 [1996])—were not revised to account for Caden N. until December 2021, three months after defendant's trial (see CJI2d[NY] Vehicle and Traffic Law § 1192 [4] and [4-a] [rev. Dec. 2021]). Even then, the CJI Committee advised in an explanatory note that "Caden N. did not explicitly discuss whether the standard for impairment for purposes of a prosecution for [vehicular] manslaughter in the second degree was also the standard to be applied in a prosecution for only VTL 1192 (4)," and that, "until an appellate court decides otherwise," a trial court may "decide to apply Caden N.'s definition of impairment for a vehicular manslaughter or assault charge and the impaired 'to any extent' definition for a VTL driving while impaired by the use of a drug or combination of [substances] charge" (id.; see 235 AD3d at 1185 [majority] and 1188 [dissent]).[FN2]
Under these circumstances, although trial counsel certainly could have argued that the Caden N. definition of impairment should be extended to Vehicle and Traffic Law § 1192 (4) and (4-a), the "mistake, if it was one, was not the sort of egregious and prejudicial error that amounts to a deprivation of the constitutional right to counsel" (see People v Thompson, 21 NY3d 555, 561 [2013] [internal quotation marks omitted]; accord People v Blake, 24 NY3d 78, 82 [2014]; see also Watkins, 42 NY3d at 640).
Finally, it is worth mentioning that in light of our decision today in People v Dondorfer (— NY — [2026]), defendant would not be entitled to a Caden N. charge if a new trial were ordered.
Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (concurring):

I agree that defendant has not established that his trial counsel was ineffective, but on different grounds than the majority. At defendant's trial for driving while his ability was impaired by the combined influence of drugs, counsel should have requested that the court instruct the jury under the heightened standard for impairment that the Appellate Division adopted in People v Caden N. (189 AD3d 84 [3d Dept 2020]), which was binding precedent at the time of the trial. The Caden N. court's reasoning for adopting that heightened standard, as opposed to the lower standard that applied in the context of driving while impaired by alcohol, was based on the Vehicle and Traffic Law's penalty scheme, and that reasoning applied in defendant's case with equal force. Furthermore, counsel had no reasonable strategic justification for failing to request an instruction that was more favorable to defendant. However, counsel's failure did not deny defendant a fair trial, because on defendant's direct appeal, the Appellate Division concluded that Caden N.'s heightened standard was limited to the crime of vehicular manslaughter, and accordingly, defendant was not entitled to the heightened standard jury charge (235 AD3d 1181, 1184-1185 [3d Dept 2025]). Counsel cannot be ineffective for failing to request relief that, on direct appeal, the Appellate Division held defendant was not entitled to. Therefore, I would affirm.***
Defendant was charged with "[d]riving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs" (Vehicle and Traffic Law § 1192 [4-a]), and two counts of "[d]riving while ability impaired by drugs" (id. § 1192 [4]). At trial, defendant's arresting officer testified that after stopping defendant's vehicle, he smelled "fresh marijuana" and observed that defendant had a "low raspy voice," "constricted" pupils, "droopy eyelids," and was argumentative. The officer frisked defendant and found a cartridge with a "thick, oily, brownish-tan substance in it," with a sticker stating "Concentrated THC." The cartridge was attached to a vaping device. During a search of defendant's vehicle, the officer found "multiple loose suboxone medication strips on the passenger side seat." According to the officer, defendant denied using marijuana that day, but he admitted that he had a prescription for the suboxone and had taken "half a dose," or four milligrams, around three hours before the stop. The officer further testified that defendant failed certain standard field sobriety tests, and that although [*4]defendant agreed to take a chemical breath test to measure the presence of alcohol, he declined a drug influence evaluation. The officer took defendant to the hospital, where he noticed that defendant's eyes were still constricted, even in the light, and that his arm went "completely . . . limp" during fingerprinting. A registered nurse testified at trial that combining marijuana and suboxone can have an "addictive effect." A State forensic investigation center employee testified that THC may remain in a person's system for several days. However, the prosecution did not present evidence as to the amount of drugs in defendant's system at the time of the incident.
In his defense, defendant testified that he had smoked marijuana the night before the stop, that he had been taking prescription drugs for a foot infection, that the infection caused any missteps during the field sobriety tests, and that he complied with the officer's instructions. Defendant further explained that he declined the drug influence evaluation because it was susceptible to subjectivity, unlike the chemical breath test to which he consented.
The central issue at defendant's trial was whether he was impaired by the combined influence of suboxone and marijuana, or by suboxone or marijuana individually, while he was driving. The Vehicle and Traffic Law does not define impairment. In People v Cruz, the Court defined "impaired," as well as the higher standard of "intoxicated," in the context of alcohol consumption, and based on the "ordinary" and "accepted meaning" of each term (48 NY2d 419, 427-428 [1979]). The Court defined impairment as whether a person "has actually impaired, to any extent, the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 426-427). It defined intoxication as a person consuming alcohol "to the extent that [they are] incapable of employing the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 428).
Less than a year before defendant's trial, the Appellate Division, Third Department, decided Caden N. In that case, the defendant was convicted of vehicular manslaughter based on evidence that he caused a motor vehicle accident that killed two people, and that there was THC in his blood (189 AD3d at 87). On appeal, the defendant challenged the sufficiency of the trial evidence (id. at 88). The Appellate Division concluded that that the Cruz standard for impairment "is misplaced in the context of assessing whether a person has committed . . . vehicular manslaughter in the second degree," a crime which, as charged in the defendant's case, requires that the defendant was impaired by the use of a drug in violation of Vehicle and Traffic Law § 1192 (4) (id. at 89-90).
The Caden N. court reasoned that the focus of both the vehicular manslaughter statute and Vehicle and Traffic Law § 1192 "is on whether a driver's ability to operate a motor vehicle has been compromised by the consumption of alcohol or drugs and to what extent," and that "[i]n effect, the greater a driver's ability to function has been compromised the greater the penalty imposed" (189 AD3d at 90). Thus, " 'the scheme of Vehicle and Traffic Law § 1192 provides for different levels or kinds of proof to establish violations of the statute' " (id., quoting People v Litto, 8 NY3d 692, 705 [2007] [internal formatting omitted]). However, "[t]his statutory scheme imposes equal sanctions upon motorists who cause death while intoxicated by alcohol or while impaired by a drug" (id.). To maintain consistency throughout the statutory scheme, the Caden N. court held that "the degree of impairment necessary to convict a motorist of vehicular manslaughter in the second degree based upon a death that was caused while such motorist was under the influence of [a] drug[ ] . . . is the same degree of impairment as would be necessary to sustain a conviction of driving while intoxicated by alcohol," as the Court defined [*5]that standard in Cruz (id. at 90-91).[FN1] The Caden N. court thus overruled its prior holding in People v Rossi (163 AD2d 660 [3d Dept 1990], lv denied 76 NY2d 943 [1990]), to the extent that the case could be read as applying the Cruz standard for impairment to vehicular manslaughter (id. at 91).
At defendant's charge conference, his counsel made no mention of Caden N. and did not request that County Court charge the jury based on the heightened standard for impairment adopted in that case. Instead, counsel requested "the standard charges," meaning the impairment standard from Cruz. It is undisputed that the prosecution bears a lower burden of proof to establish impairment as defined in Cruz, as compared with the heightened standard adopted in Caden N.
The jury convicted defendant of driving while ability impaired by the combined influence of suboxone and marijuana, and driving while ability impaired by marijuana, but it acquitted him of driving while ability impaired by suboxone alone. On appeal, the Appellate Division affirmed defendant's conviction (235 AD3d at 1189). The court rejected defendant's ineffective-assistance claim, reasoning that Caden N., "by its own express language, limited its holding to the crime of vehicular manslaughter" and "the unique rationale relied upon therein is peculiar to" that charge (id. at 1184-1185). Thus, according to the Appellate Division, "defense counsel properly acquiesced to the jury being charged in accordance with the definition of impairment that was provided in the Criminal Jury Instructions as of that time," which were based on the Cruz standard, and therefore was not ineffective (id. at 1185). One Justice dissented in part, concluding that counsel's failure to request a jury charge on the heightened standard deprived defendant of a fair trial (id. at 1186-1189 [Lynch, J., dissenting]). Although the dissenting Justice concluded that counsel's error did not render them constitutionally ineffective, he would have ordered a new trial in the interest of justice based on the "erroneous charge" (id. at 1187-1189 [Lynch, J., ). The dissenting Justice granted defendant leave to appeal (43 NY3d 967 [2025]).
I agree with the majority that defendant has failed to establish that his trial counsel was ineffective. "Under New York law, a defendant has received ineffective assistance of counsel when errors in counsel's performance amount to a denial of 'meaningful representation' " (People v T.P., — NY3d —, —, 2025 NY Slip Op 03642, *2 [2025], quoting People v Caban, 5 NY3d 143, 152 [2005]). This standard is more protective than the federal standard that the United States Supreme Court established in Strickland v Washington, which requires that a defendant show that their counsel's performance was not "reasonable considering all the circumstances" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (466 US 668, 688, 694 [1984]). Whether a defendant received "meaningful representation" under the New York standard depends on "the fairness of the process as a whole rather than its particular impact on the outcome of the case" (People v Benevento, 91 NY2d 708, 714 [1998]). This standard considers "the evidence, the law, and the circumstances of a particular case . . . as of the time of the representation" (People v Baldi, 54 NY2d 137, 147 [1981]). "Counsel's performance should be objectively evaluated to determine whether it was consistent with strategic decisions of a [*6]reasonably competent defense attorney," and whether such performance denied defendant a fair trial (Benevento, 91 NY2d at 712-713 [internal quotation marks and citations omitted]).
"[I]t is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare . . . the law . . . relevant to the defense" (People v Droz, 39 NY2d 457, 462 [1976]). We have explained that "counsel is not ineffective when the success of the argument the defendant claims should have been made by counsel depended on the resolution of novel questions, or when, at the time of the defendant's trial, there was no clear appellate authority supporting the argument the defendant claims that counsel should have made" (People v Hayward, 42 NY3d 753, 756 [2024] [internal quotation marks and citations omitted]).
Contrary to the majority's conclusion, defense counsel's failure to request a jury instruction based on the Caden N. standard was an egregious error (see majority op at 6). Caden N.'s reasoning was clear-cut and plainly applicable to the charges at defendant's trial. The court based its holding on the penalty regime in the Vehicle and Traffic Law and that regime's incorporation into the vehicular manslaughter statute. Specifically, the Vehicle and Traffic Law imposes higher penalties "the greater a driver's ability to function has been compromised" (189 AD3d at 90, citing Litto, 8 NY3d at 705). Since the vehicular manslaughter statute imposes equal sanctions "upon motorists who cause death while intoxicated by alcohol or while impaired by a drug," the Caden N. court concluded that impairment by drug use must involve the same amount of compromised function as intoxication by alcohol, and more than impairment by alcohol, for which a person cannot be charged with vehicular manslaughter (189 AD3d at 90). Caden N.'s reasoning applies with equal force to defendant's case. Driving while ability impaired by alcohol is a traffic infraction, while driving while ability impaired by drugs, or by the combined influence of drugs, is a misdemeanor (see Vehicle and Traffic Law § 1193 [1] [a], [b]). Notably, because defendant had a prior Vehicle and Traffic Law § 1192 (4) conviction, his current charges were elevated to felonies (see id. § 1193 [1] [c] [i]). Had defendant been charged with driving while ability impaired by alcohol, his predicate conviction would not have elevated the offense to a felony, or even to a misdemeanor (see id. § 1193 [1] [b], [c]). Thus, defendant faced higher and harsher penalties for allegedly being impaired by drugs, as opposed to being impaired by alcohol, the same basis for the Caden N. court's conclusion that the heightened standard for impairment applied in that case.
Unquestionably, Caden N.'s heightened standard for impairment was more favorable to defendant, as it required that "the People . . . prove that [he] was incapable of employing the physical and mental abilities which he . . . was expected to possess in order to operate a vehicle as a reasonable and prudent driver" (189 AD3d at 90-91 [internal quotation marks and formatting omitted]). Under that standard, the jury might have acquitted defendant, given that the prosecution's evidence turned on the arresting officer's observations of defendant's behavior rather than test results confirming the presence of drugs in defendant's blood and there was no evidence of erratic driving. Further, the jury could have credited defendant's testimony that he only used marijuana the night prior to the stop and that his foot infection could have affected his performance on the field sobriety tests.
Counsel was professionally obligated to provide "[c]ompetent representation" to defendant by having "the legal knowledge, skill, thoroughness and preparation reasonably necessary" to represent him (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.1 [a]). Caden N. was binding precedent at the time of defendant's trial, and no reasonable attorney would have failed to request a charge based on Caden N.'s heightened standard for impairment, [*7]given that its reasoning squarely applied. Indeed, there was nothing to lose and everything to gain by counsel requesting that charge. If County Court had granted the request, the prosecution would bear a heavier burden to establish defendant's impairment, thus benefitting defendant; if the court denied the request, defendant would be no worse off, and he would have preserved an appellate claim for a new trial. Under these circumstances, there was no reasonable strategic basis for counsel to refrain from requesting the heightened standard charge.
However, counsel was not constitutionally ineffective. Under the well-established federal and state standards, counsel cannot be ineffective for failing to make a claim when, within the same prosecution and appeal, an appellate court determines that the claim was meritless (see Strickland, 466 US at 694; Caban, 5 NY3d at 152). That is the case here, where the Appellate Division expressly cabined Caden N. to cases where a defendant is charged with vehicular manslaughter and thereby rejected defendant's claim that the heightened standard applies to Vehicle and Traffic Law § 1192 (4) and (4-a), as charged against him. Given that an appellate court held on direct appeal that defendant was not entitled to the charge that counsel failed to request, defendant cannot establish prejudice, as required under the federal standard for ineffectiveness (see Strickland, 466 US at 694). Nor was defendant denied a fair trial, as required under our State standard (see Caban, 5 NY3d at 152). Therefore, defendant's ineffectiveness claim fails, not because Caden N. was unclear and an attorney could reasonably have chosen not to rely on it to request a charge on the heightened standard, but because the Appellate Division rejected the basis for that claim on direct appeal.[FN2]
Order affirmed. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Garcia, Singas, Troutman and Halligan concur. Judge Rivera concurs in result in an opinion.
Decided February 17, 2026

Footnotes

Footnote 1: The Third Department reached this conclusion based on its analysis of the authorized penalties for vehicular manslaughter. Observing that intoxication is required to support a charge of vehicular manslaughter when alcohol is involved, whereas the charge requires only impairment when drugs are involved, the Third Department reasoned that unless alcohol intoxication and drug impairment were defined the same, vehicular homicides caused by similarly impaired drivers would result in different punishments depending upon which substance was used, a result that Court found unsupportable (see 189 AD3d at 90).

Footnote 2: Although ineffective assistance must be assessed as of the time of defendant's trial, the post-trial developments here are notable. There is no obvious reason why a reasonable attorney at the time of defendant's trial would have interpreted Caden N.'s holding as extending more broadly than the CJI Committee and the Third Department ultimately did when they were presented with the question shorty after defendant's trial.

Footnote 1: Today, we reject Caden N.'s reasoning in People v Dondorfer, holding that the same standard for impairment applies consistently throughout Vehicle and Traffic Law § 1192 (— NY3d —, — [2026]).

Footnote 2: Defendant's other grounds for asserting that counsel was ineffective are similarly without merit.