People v Washington (2025 NY Slip Op 25265)

[*1]

People v Washington

2025 NY Slip Op 25265

Decided on November 24, 2025

County Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 24, 2025
County Court, Putnam County

The People of the State of New York,

againstStephen Washington, Defendant.

Indictment No. 70161-25

Putnam County Legal Aid Society, Inc. 
Attorneys for Defendant Stephen Washington 
Attn: Marisa N. Finkelberg, Esq.12 Fair Street 
Carmel, NY 10512Email: [email protected]Putnam County District Attorney's OfficeAttn: ADA Mackenzie Ferguson 
40 Gleneida AvenueCarmel, NY 10512Email: [email protected]

Anthony R. Molé, J.

The following papers were read and considered on the omnibus motion (Mot. Seq. No. 1) made by defendant STEPHEN WASHINGTON (hereinafter defendant):
Papers:1. Notice of Omnibus Motion; Counsel's Affirmation in Support; Exhibits A-C2. People's Affirmation in Response; Exhibits 1-23. Defense Counsel's Affirmation in Reply; Exhibits A-C4. Transcript of the Grand Jury Minutes from July 11, 2025Upon review of the foregoing papers, the Court finds, holds, and determines as follows:
On July 11, 2025, defendant was charged in a five-count indictment with driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, as a class E felony, in violation of Vehicle and Traffic Law § 1192 (4-a) (count one); driving while ability impaired by drugs (DWAI), as a class E felony, in violation of Vehicle and Traffic Law § 1192 (4) (count two)[FN1]
; criminal possession of a controlled substance in the seventh degree in [*2]violation of Penal Law § 220.03 (counts three and four); and criminally using drug paraphernalia in the second degree in violation of Penal Law § 220.50 (2).
The underlying charges in this case stem from an incident during the early morning hours of July 7, 2025, when defendant was operating a motor vehicle in the Town of Putnam Valley, while allegedly impaired by illicit drugs and alcohol. Upon his arrest, police found that defendant illegally possessed oxycodone, phencyclidine (PCP)[FN2]
, and drug paraphernalia when his car was inventoried.
Defendant was arraigned on July 30, 2025, when he entered a not guilty plea. On October 1, 2025, he filed an omnibus motion requesting various associated relief. The People filed their responsive papers on October 17, 2025. Defendant, in turn, filed reply papers on November 5, 2025. Defendant's omnibus motion is thus fully submitted and ripe for determination. The Court will address each branch of his motion, in turn, and dispose of it as follows:
I. The Grand Jury ProceedingInitially, defendant moves to dismiss counts one and two of the indictment by claiming that those charges are based on legally insufficient evidence. Defendant also asks the Court to determine the integrity and potential defectiveness of the underlying grand jury proceeding.
The People, in opposition, counter that the evidence presented to the grand jury was legally sufficient in all respects to support charging defendant with the underlying offense. The People maintain that the proceeding itself was not defective, the integrity of the proceeding is legally sound, and that it was not impaired by hearsay evidence or other perceived minor flaws and errors. For the reasons that follow, the Court agrees with the People in sustaining the indictment in its entirety.
a. Legal StandardIt is well settled that on a motion to dismiss an indictment based on the alleged legal insufficiency of the evidence before the grand jury, the Court must determine whether there is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]; see People v Jensen, 86 NY2d 248, 251-252 [1995]). "Courts assessing the sufficiency of the evidence before a grand jury must evaluate whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted — and deferring all questions as to the weight or quality of the evidence — would warrant conviction" (People v Mills, 1 NY3d 269, 274-275 [2003] [internal quotation marks and citation omitted]; accord People v Wisey, 133 AD3d 799, 799-800 [2d Dept 2015]).
"In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt. The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts [*3]supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference. That other, innocent inferences could possibly be drawn from those facts is irrelevant to the sufficiency inquiry as long as the Grand Jury could rationally have drawn the guilty inference" (People v Wisey, 133 AD3d at 800 [internal quotation marks and citations omitted]; see People v Deegan, 69 NY2d 976, 979 [1987]). "Inquiry into the adequacy of the proof to establish reasonable cause — the 'degree of certitude' the evidence provides — is exclusively the province of the Grand Jury" (People v Swamp, 84 NY2d 725, 730 [1995]; see CPL 190.65 [1] [b]).
Importantly, "[i]t is sufficient if the [prosecutor] provides the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime. The People have wide discretion in presenting evidence to establish their case and do not have the obligation to present to the Grand Jury every piece of evidence which they possess against a suspect, nor must every matter which may have a tendency to reflect upon the credibility of a witness be revealed. The Grand Jury proceeding is not intended to be adversarial in nature or a minitrial of the individual suspected of committing a crime" (People v Shahzad, 71 AD3d 704, 705-706 [2d Dept 2010] [internal quotations marks and citations omitted] [emphasis added]; see People v Colucci, 32 AD3d 1044, 1045 [2d Dept 2006]; People v Suarez, 122 AD2d 861, 862 [2d Dept 1986], lv denied 68 NY2d 817 [1986]).
Moreover, the Court of Appeals has expressed that CPL 210.35 (5) establishes a "high test" to qualify for the "exceptional remedy" of dismissing an indictment: "[t]he statutory test is very precise and very high" (see People v Darby, 75 NY2d 449, 455 [1990]). "[M]ere flaw, error[,] or skewing" is not enough (id.). In other words, defendant bears a heavy burden in endeavoring to dismiss a grand jury's indictment.
"Generally, hearsay evidence is inadmissible before the Grand Jury" (People v Dunn, 248 AD2d 87, 94 [1st Dept 1998], appeal withdrawn 93 NY2d 1002 [1999]; see People v Huston, 88 NY2d at 406-407). However, "hearsay evidence may be admitted before the Grand Jury so long as the resulting indictment[] [is] not founded on hearsay which the Grand Jury 'may not have understood as such'" (People v Perry, 199 AD2d 889, 893 [3d Dept 1993], quoting People v Pelchat, 62 NY2d 97, 106 [1984]). Errors in admission of hearsay evidence must be of a significant magnitude to impair the integrity of grand jury proceedings (see People v Carey, 241 AD2d 748, 750-751 [3d Dept 1997], lv denied 90 NY2d 1010 [1997]). Even "isolated instances of hearsay testimony, which were accompanied by appropriate limiting instructions, do not warrant dismissal" of the indictment (People v Miller, 110 AD3d at 1150-1151) — so long as there is otherwise legally sufficient and admissible evidence to sustain the counts of the indictment.
b. The Grand Jury ProceedingApplying these legal principles to the case at hand, the Court finds that the evidence presented to the grand jury, when viewed in the light most favorable to the People, is legally sufficient to charge defendant with all of the offenses, inclusive of counts one and two of the indictment (see Vehicle and Traffic Law §§ 1192 [4]; [4-a]; see also CPL 70.10 [1]; People v Mills, 1 NY3d 269, 274-275 [2003]; People v Wisey, 133 AD3d at 799-801). Defendant's claim that the indictment is grounded upon legally insufficient evidence is therefore without merit (see [*4]People v Williams, 150 AD3d 1273, 1279 [2d Dept 2017], lv denied 29 NY3d 1135 [2017]).
Preliminarily, the Court points out that the minutes reflect that a quorum of grand jurors was present at the beginning of the proceeding and before the grand jury voted to deliberate (see People v Huston, 88 NY2d at 409; People v Robinson, 156 AD3d 1123, 1128 n 8 [3d Dept 2017], lv denied 30 NY3d 1119 [2018]). The entire proceeding lasted a single day, having commenced and concluded on the same date, when the grand jury voted a true bill on all five counts. Defendant's due process rights were not violated during the grand jury process. Nor does the Court find that the proceeding itself was infected or impaired by the prosecutor's presentation, conduct, and instructions to the body. 
Defendant challenges the legal sufficiency of the evidence presented to the grand jury pertaining to counts one and two of the indictment by arguing that the prosecutor failed to present "any evidence" during the proceeding that his "ability to operate a [motor] vehicle was impaired." He assails the observations of the police officer who followed his vehicle on the night in question and claims that his car was inoperable; thus, according to him, the two DWAI charges cannot be sustained inasmuch as his motor vehicle was inoperable, as was confirmed by police. Additionally, defendant contends that the grand jury evidence is devoid of proof that he was actually impaired by any controlled substance(s). The Court addresses each of those counts challenged by defendant.
1. Count One: Vehicle and Traffic Law § 1192 (4-a)Insofar relevant here, a person is guilty of violating Vehicle and Traffic Law § 1192 (4-a) when an individual "operate[s] a motor vehicle while the person's ability to operate such motor vehicle is impaired by the combined influence of drugs or of alcohol and any drug or drugs" (id. [emphasis added]). The Court notes that the proscribed statute contains conjunctive and disjunctive words, which are underscored here.
Contrary to defendant's averments, the grand jury minutes reflects that police did observe defendant operating (driving) a motor vehicle on the night in question immediately preceding his arrest. Ashley Benjamin-Lam, a deputy with the Putnam County Sheriff's Office, testified before the grand jury that she first saw defendant's vehicle parked at a gas station at approximately 2:30 a.m. on the morning of July 7, 2025, and that she personally observed defendant drive off when his "vehicle left the location" and he later "returned to the [gas] station" about 2 to 3 minutes "after" he drove off. Notably, Benjamin-Lam added that defendant "proceeded to drive the vehicle out of the [gas] station," whereupon she began to "follow[] [defendant's] vehicle," and shortly thereafter, she discovered his vehicle "disabled with . . . hazards on . . . Barger street . . . in the middle of the double[-]yellow line." Hence, defendant's assertion that he did not operate his motor vehicle within the purview of counts one and two is belied by Deputy Benjamin-Lam's testimony to the grand jury.
Defendant's further claim that he was not impaired by a narcotic drug while operating his motor vehicle on the night in question is contrary to the evidence presented to the grand jury. [*5]Certain portions of Deputy Benjamin-Lam's body-worn camera recording,[FN3]
depicting her encounter with defendant and his subsequent arrest, were played for the grand jury. After viewing those portions of her body-worn camera recording, the Court can understand why the grand jury concluded that defendant was impaired during the incident in question based on his behavior, demeanor, unprompted remarks, and his responses to Benjamin-Lam's questions.
Further, Ryan Diskin, a deputy with the Putnam County Sheriff's Office who responded to the scene, testified before the grand jury, described his training as a police officer including, among other things, specialized DWI detection, roadside impaired driving enforcement, and conducting standardized field sobriety tests and breath analyses. Diskin testified that he conducted standardized field sobriety tests upon defendant to determine if he was impaired. Diskin spoke at length about each of the three sobriety tests he performed on defendant, stating that defendant failed each of those tests according to his training and experience. In conducting the field sobriety tests at the scene, Diskin stated that defendant "was basically impaired to the point of noncompliance." When asked about defendant's state of sobriety, Diskin responded that he was of the opinion that defendant was "under the influence of . . . a combination of alcohol and narcotics."
Diskin further testified that after defendant was placed under arrest, an inventory of his vehicle was done. Diskin stated that he discovered several items, including Oxycodone pills, a cigarette that "appeared to be stained with some residue," and a "glass vial that contained . . . an oily liquid." Diskin testified that those items were collected and that a drug recognition expert ("DRE") was contacted to test those items in order to determine if they were narcotic drugs which, after testing, was confirmed.
In this regard, Robert Weinberg, a deputy with the Putnam County Sheriff's Office who is a qualified DRE, testified before the grand jury that he performed a drug influence evaluation to assess whether defendant, as a motorist, was driving under the influence of drugs, alcohol, or a combination thereof. Weinberg stated that he reported to the county jail to perform a drug influence evaluation during the early morning hours of July 7, 2025. Weinberg detailed at length to the grand jury about the process of conducting such evaluation, inclusive of testing defendant's blood alcohol content (BAC) by an instrument commonly known as a DataMaster breathalyzer device — which in this case, generated a reading of .02 of one per centum by weight (see generally People v Boscic, 15 NY3d 494, 499 [2010]; People v Robinson, 1 AD3d 701, 702 [3d Dept 2003])
Critically, Weinberg testified that after conducting various field sobriety tests and the drug influence evaluation, he formed an opinion that defendant "was under the influence of alcohol, a dissociative anesthetic[,] and a narcotic analgesic" (emphasis added). Weinberg described the effects of a dissociative anesthetic and narcotic analgesic and what those drugs are. In addition, Weinberg explained "poly-drug" usage when a person takes several drugs simultaneously in different categories, creating an inherent potential for cross reactivity, and how doing so effects the human body. Weinberg further testified that he performed field tests of the items recovered from defendant's vehicle, noting that the "glass jar with a green leafy substance . . . soaked in clear liquid" was PCP (a dissociative anesthetic); and that the pills [*6]discovered in defendant's vehicle were, in fact, Oxycodone (a narcotic analgesic).
Viewed in a light most favorable to the prosecution, the Court concludes that the evidence before the grand jury is legally sufficient to establish that defendant "operate[d] a motor vehicle while [his] ability to operate such motor vehicle [was] impaired by the combined influence of . . . alcohol and . . . drugs" (cf. People v Capitano, 204 AD3d 1522, 1523 [4th Dept 2022] [emphasis added]; see People v Ingram, 128 AD3d 1404, 1404-1405 [4th Dept 2015], lv denied 25 NY3d 1202 [2015]; People v Barreno, 74 Misc 3d 135[A], *1 [App Term, 2d Dept, 11th & 13th Jud Dists 2022]; People v Faraone, 58 Misc 3d 149[A], 2018 NY Slip Op 50083[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2018]).
Defendant's theory that he was not impaired since his BAC level was only .02% is misguided and rejected. The government cites People v Dondorfer (235 AD3d 71 [4th Dept 2024], lv granted 43 NY3d 944 [2025]) in their response papers, wherein the Fourth Department held that "the People correctly instructed the grand jury that the term 'impaired' in the context of Vehicle and Traffic Law § 1192 (4-a) is defined as the defendant's consumption of a combination of drugs and alcohol to the point that it 'has actually impaired, to any extent, the physical and mental abilities which the defendant is expected to possess in order to operate a vehicle as a reasonable and prudent driver'" (id. at 72-73 [brackets omitted] [emphasis added], quoting People v Cruz, 48 NY2d 419, 427 [1979]). In so holding, the Dondorfer Court examined the legislative history and prior Court of Appeals' precedent in reaching this conclusion; and it noted that "the term 'impaired' has been defined by the 'to[-]any[-]extent' standard for almost 50 years, and has clearly and consistently been distinguished from the term 'intoxication' for all of that time" (People v Dondorfer, 235 AD3d at 80; see People v Litto, 8 NY3d 692, 706-707 [2007]; People v Cruz, 48 NY2d at 427-428).
The defense, in reply, briefly mentions the Dondorfer case but glosses over the primary holding. The rule in Dondorfer settles the issue here and defeats defendant's argument. The Court agrees with the holding and rationale laid out therein. Like that case, the principles of statutory construction also prevail over the rule of lenity too in this instance (see People v Dondorfer, 235 AD3d at 79-81).[FN4]

To the extent that the Third Department, in People v Caden N. (189 AD3d 84 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]), has a different interpretation of the term "impaired" by drugs, that case is not on point with this one. The facts there are distinguishable from this matter because the defendant in Caden N. was not charged with violating Vehicle and Traffic Law § 1192 (4-a). In contrast here, Mr. Washington is charged with that specific offense. The allegations from the grand jury evidence reveal that defendant's impairment under that statute was caused by "the combined influence of . . . alcohol and any drug or drugs" (id. [emphasis [*7]added]).[FN5]

The Court further cites People v Ambrosio (235 AD3d 1181 [3d Dept 2025], lv granted 43 NY3d 967 [2025]), where in a memorandum and order, the Third Department explained its limited holding in Caden N. by stating that "this Court, by its own express language, limited its holding to the crime of vehicular manslaughter" and the Third Department "was careful to state that it was defining impairment 'in the context of assessing whether a person has committed the crime of vehicular manslaughter in the second degree'" (People v Ambrosio, 235 AD3d at 1184, quoting People v Caden N., 189 AD3d at 90). Moreover, the Third Department goes on to say in Ambrosio that "[i]n the event that this Court had also wished to apply the new definition of impairment to the underlying crimes of driving while ability impaired by drugs or by a combination thereof, it surely would have explicitly stated as much" (People v Ambrosio, 235 AD3d at 1184-1185). And notably, the Third Department highlights in Ambrosio that the Criminal Jury Instructions were amended in December of 2021 to reflect the Caden N. decision, whereby "the CJI2d Committee indicated that the Caden N. definition of impairment is to be given in connection with the charge of vehicular manslaughter, but need not be given relative to the charges of driving while ability impaired by drugs or by a combination thereof" (id. at 1185 [emphasis supplied]; see CJI2d [NY] Vehicle & Traffic Law §§ 1192 [4]; 1192 [4-a] [as rev Dec. 2021], https://nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%284-a%29.pdf [last accessed Nov. 21, 2025]).[FN6]

This Court, as a trial-level court, is bound by the doctrine of stare decisis to apply precedent established in another Department vis-à-vis in Dondorfer, because no relevant precedent is available from the Appellate Division, Second Department or the Court of Appeals on the meaning of the term "impaired" in the context of a person violating Vehicle and Traffic Law § 1192 (4-a). The Second Department has not directly spoken or ruled on that particular issue.
"The Appellate Division is a single State-wide court divided into departments for administrative convenience . . . and, therefore, the doctrine of stare decisis requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [the Appellate Division of this department] pronounces a contrary rule" (Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [1984] [internal citations omitted]; see also People v Turner, 5 NY3d 476, 481-482 [2005]). Because Dondorfer is the only New York appellate authority on point on that framed narrow issue, the correct procedural course is to [*8]adhere to the Fourth Department's holding in Dondorfer by ruling here that it is "binding authority at the nisi prius level" (Mountain View Coach Lines v Storms, 102 AD2d at 664; see Mohen v Stepanov, 59 AD3d 502, 504 [2d Dept 2009]; see also Summit Const. Services Group, Inc. v Act Abatement, LLC, 34 Misc 3d 823, 831-832 [Sup Ct, Westchester County 2011]
Applying the governing legal principles to the case at hand, the Court finds that the People properly instructed the grand jury on the definition of the term "impaired" insofar as it pertains to count one of the indictment, which charges defendant with driving a vehicle while his ability was impaired by the combined influence of alcohol and drugs (see Vehicle and Traffic Law § 1192 [4-a]; People v Dondorfer, 235 AD3d at 72-73; see also People v Cruz, 48 NY2d at 427). Other than a conclusory contention, defendant does not expound upon his argument that his low level of alcohol intoxication, where the breathalyzer yielded a BAC measurement of 0.2%, does not constitute impairment under the Vehicle and Traffic Law (see Vehicle and Traffic Law § 1192 [4-a]).
The grand jury proof evinces that the police administered several field sobriety tests upon defendant which he failed. A Datamaster chemical test administered shortly after defendant's arrest had shown a BAC of 0.2%, signifying that he had alcohol in his system. Grand jury evidence also demonstrated that defendant had taken narcotic drugs, including having a dissociative anesthetic and a narcotic analgesic in his system, which caused his impairment. Defendant's consumption of a combination of drugs and alcohol rendered him impaired on the night in question for purposes of operating a motor vehicle (see People v Dondorfer, 235 AD3d at 72-73; see also People v Cruz, 48 NY2d at 427). For the aforesaid reasons, the Court sustains count one of the indictment.
2. Count Two: Vehicle and Traffic Law § 1192 (4)Likewise, the Court holds that there is legally sufficient evidence to charge defendant with driving while ability impaired by drugs in violation of Vehicle and Traffic Law § 1192 (4). Defendant contends that it is "difficult to conclude" that such count can survive this motion to dismiss. The Court disagrees.
In this regard, the defense's reliance on a toxicology report from the Forensic Investigation Center from the State Police, which also indicated the presence of a metabolite of Tetrahydrocannabinol (THC), marihuana's active ingredient, and cocaine in defendant's system from the incident in question, was not admitted into the grand jury as evidence; in other words, the toxicology report was not a part of the grand jury proof and is of no moment in connection with that branch of defendant's motion to dismiss counts one and two of the indictment.
As relevant here, a person is guilty of driving while ability impaired by drugs when he or she "operate[s] a motor vehicle while the person's ability to operate such a motor vehicle is impaired by the use of a drug" (id.; see People v Fragassi, 178 AD3d 1153, 1154 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]). "The term 'drug' is defined in the Vehicle and Traffic Law as any substance listed in section 3306 of the Public Health Law" (People v Jackson, 32 Misc 3d 139[A], 2011 NY Slip Op 51550[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2011], quoting Vehicle and Traffic Law § 114-a).
Both PCP and oxycodone are narcotic drugs. Penal Law § 220.00 (7) defines a narcotic drug, in relevant part, as any controlled substance listed in schedule I (d), I (e), II (b), or II (c). According to the Public Health Law, PCP and oxycodone are thus controlled substances (see [*9]Public Health Law §§ 3306 [I] [e] [3], [II] [b] [1] [14]; see also Matter of Connelly, 235 AD3d 53, 55 [2d Dept 2025]; People v McCollum, 176 AD3d 1402, 1403 [3d Dept 2019]; People v Drouin, 115 AD3d 1153, 1154 [4th Dept 2014], lv denied 23 NY3d 1019 [2014]; People v Price, 49 Misc 3d 130(A) [App Term, 2d Dept, 11th & 13th Jud Dists 2015]).[FN7]

Upon viewing the grand jury evidence in a light most favorable to the prosecution, the Court concludes there is sufficient proof to indict defendant with driving while ability impaired by drugs in violation of Vehicle and Traffic Law § 1192 (4). The grand jury credited the observations of Deputy Benjamin-Lam who explained in her testimony about defendant's suspicious actions at the gas station, during which she personally saw defendant driving a motor vehicle, briefly followed his car, and eventually found defendant's vehicle disabled in the middle of a roadway and inoperable. Deputy Benjamin-Lam testified about her initial interactions with defendant and his noticeable level of impairment, explaining that he had slurred speech, that he appeared disoriented and confused, and that he was stumbling and unable to stand straight.
Deputy Diskin, who conducted the standardized field sobriety tests upon defendant, testified that he too made similar observations of defendant and thus concluded that defendant was "under the influence of . . . narcotics" based on his professional opinion. An inventory of defendant's vehicle revealed, among other things, various illicit substances. Deputy Weinberg, as a DRE, gave expert testimony that he tested the substances found in defendant's vehicle and confirmed that the pills were Oxycodone and the "glass vial that contained . . . an oily liquid" contained PCP. Furthermore, Deputy Weinberg testified that defendant was under the influence of drugs based on performing a drug influence evaluation upon the accused. It certainly does not defy logic that the grand jury could have reasonably determined that the cigarette found in defendant's vehicle was laced with PCP. Such evidence provides reasonable cause to believe that defendant was impaired by the use of illegal controlled substances that are banned under Public Health Law § 3306 (see Penal Law § 220.00 [7]; see also Public Health Law §§ 3306 [I] [e] [3], [II] [b] [1] [14]).
All things considered, there is enough evidence of the impairment itself, including defendant's impaired motor coordination and his inability to perform several roadside tests of coordination and balance. The foregoing evidence, when viewed in a light most favorable to the People, constitutes legally sufficient evidence to establish that defendant's ability to operate a motor vehicle was impaired by the effects of drugs (see People v Roth, 256 AD2d 1206, 1206 [4th Dept 1998]). Proof was adduced that oxycodone and PCP were present in defendant's blood when the incident in question occurred (see e.g. People v Chudy, 60 Misc 3d 139[A], *2-3 [App Term 2018], lv denied 32 NY3d 1063 [2018]). The grand jury was free to accept all of the evidence and reach a conclusive determination that defendant's conduct constituted a violation of Vehicle and Traffic Law § 1192 (4). Thus, count two of the indictment is also sustained (see id.).
3. Counts Three, Four, and Five: Charges of Drug Possession and Criminally Using Drug ParaphernaliaTurning to the remaining counts, defendant does not specifically challenge counts three, four, and five of the indictment; therefore, he has waived any particular arguments in connection [*10]with those charges. In any event, the Court holds that the indictment charging him with two counts of criminal possession of a controlled substance in the seventh degree and a single count of criminally using drug paraphernalia in the second degree is supported by legally sufficient evidence (see Penal Law §§ 220.03; 220.50 [2]).
"A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance" subject to certain exceptions not relevant here (Penal Law § 220.03). "A person is guilty of criminally using drug paraphernalia in the second degree when he [or she] knowingly possesses or sells . . . [g]elatine capsules, glassine envelopes, vials, capsules or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant" (Penal Law § 220.50 [2]).
Possession includes actual physical possession or constructive possession through the exercise of dominion or control over the contraband by a sufficient level of control over the area in which the contraband was found (see Penal Law § 10.00 [8]). "Constructive possession may be established by circumstantial evidence and any conflict in the evidence regarding a defendant's dominion and control over the drugs in question" (People v Garcia-Toro, 155 AD3d 1086, 1086-1087 [3d Dept 2017], lv denied 30 NY3d 1115 [2017] [internal quotation marks, brackets, and citations omitted]).
"Dominion or control is necessarily knowing, and such constructive possession may qualify as knowing possession" (People v Muhammad, 16 NY3d 184, 188 [2011] [internal quotation marks and citation omitted]). Whether a defendant had dominion or control over the area where the contraband was found may be inferred from the circumstances. "Possession of a controlled substance generally 'suffices to permit the inference that the possessor knows what he [or she] possesses, especially, but not exclusively, if it is in his [or her] hands'" (People v Davis, 244 AD2d 1003, 1004 [4th Dept 1997], quoting People v Reisman, 29 NY2d 278, 285 [1971], cert denied 405 US 1041 [1972]).
Viewed in the light most favorable to the People, the evidence is sufficient to make out a prima facie case as to all of the elements of the offenses of criminal possession of a controlled substance in the seventh degree and criminally using drug paraphernalia in the second degree (see Penal Law §§ 220.03; 220.50 [2]). There was ample testimony about police's discovery of the Oxycodone pills and a glass vial containing PCP that were recovered from defendant's vehicle after his arrest. Such testimonial evidence constitutes legally sufficient evidence to establish that defendant knowingly possessed controlled substances and that he criminally used drug paraphernalia (see People v Patterson, 199 AD3d 1072, 1074-1076 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]; People v Shabazz, 177 AD3d 1170, 1171-1172 [3d Dept 2019]; People v Jiminez, 223 AD2d 558, 558 [2d Dept 1996], lv denied 88 NY2d 849 [1996]; People v Wilson, 210 AD2d 666, 666-667 [3d Dept 1994], lvs denied 85 NY2d 945 [1995], 88 NY2d 970 [1996]).
Upon examining the grand jury minutes and the totality of the proceeding, the Court concludes that the evidence presented to the grand jury is legally sufficient to sustain all five counts charged in the subject indictment. Again, all questions as to the quality or weight of such evidence must be deferred. Therefore, defendant's motion to dismiss the indictment is denied in its entirety (see CPL 70.10 [1]; People v Mills, 1 NY3d 269, 274-275 [2003]; People v Jennings, [*11]69 NY2d 103, 115 [1986]; People v Wisey, 133 AD3d at 799-801).
c. Integrity of the Grand Jury ProceedingThe Court further holds that there was no serious irregularity that impaired the integrity of the grand jury proceeding, so as to prejudice defendant (see People v Lashua, 264 AD2d 951, 951-952 [3d Dept 1999]). All in all, defendant makes no meritorious argument that the grand jury proceeding was defective or that the integrity of the proceeding was somehow impaired.
To the extent that defendant asserts any purported claims of error in the prosecutor's presentation of the case to the grand jury, this Court's review of the grand jury minutes reveals no errors or conduct on the part of the prosecutor that impaired or infected the integrity of the proceeding, or that otherwise prejudiced him (see People v Huston, 88 NY2d at 409; People v Nelson, 156 AD3d 1112, 1116 n 1 [3d Dept 2017], lvs denied 31 NY3d 1145, 1151, 1152 [2018]). "There is no legal requirement that the prosecutor deliver any particular charge to the Grand Jury" (see People v McLaurin, 196 AD2d 511, 511 [2d Dept 1993], lv denied 82 NY2d 757 [1993]). In this regard, CPL 190.30 (7) states that "[w]herever it is provided in article [60] that a court presiding at a jury trial must instruct the jury with respect to the significance, legal effect[,] or evaluation of evidence, the district attorney, in an equivalent situation in a grand jury proceeding, may so instruct the grand jury" (emphasis added]).
Here, the prosecutor instructed the grand jury on the law, providing legal definitions about each of the five charges, his prior conviction, and other specific instructions related thereto. Afterwards, the grand jury secretly deliberated and voted a true bill on all counts which were submitted with a quorum present. "A grand jury 'need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law'" (People v Ruvalcaba, 187 AD3d 1553, 1554 [4th Dept 2020], lv denied 36 NY3d 1053 [2021] [internal brackets omitted], quoting People v Calbud, Inc., 49 NY2d at 394-395).
Also, the Court notes that the prosecutor's instructions to the grand jury comported with the charged offenses, since the prosecutor read the statutory text contained in the applicable statutes at hand — which the grand jury apparently construed based on the text's most natural and obvious meaning. In addition, the prosecutor read certain definitions and instructions to the grand jury to help them better understand the process.
Furthermore, the prosecutor advised the grand jury about burdens of proof and the primary function of that body. The Court finds that the legal instructions provided by the prosecutor to the grand jury adequately enabled it to make an informed and intelligent decision as to whether an indictment was authorized under the circumstances of this case (see People v Hart, 25 AD3d 815, 816 [3d Dept 2006], lv denied 6 NY3d 834 [2006]). The grand jury was entitled to credit or reject all or some of the evidence presented as it determined. The evidence before the grand jury is legally sufficient to support the subject indictment. Thus, that branch of defendant's motion to dismiss the indictment is denied in its entirety (see CPL 190.65 [1]; People v Jennings, 69 NY2d at 115).
II. Defendant's Motion to Preclude his Alleged Oral Statement(s) to The 
PoliceNext, defendant moves to preclude any of his noticed statements to police, which were recorded or could be used against him at trial, inasmuch as he avers that police did not mirandize [*12]him until nearly 90 minutes after he was arrested despite holding him in custody. According to defendant, the police report and corresponding records reflect that he was arrested at approximately 3:09 a.m. on July 7, 2025, but he was finally provided his Miranda warnings at approximately 4:30 a.m. that same morning, during which time police held him in custody, further investigated the matter, and continued to ask him incriminating questions. Defendant thus moves to summarily suppress all oral statements that he allegedly made to law enforcement officials or police personnel in violation of his constitutional rights due to the alleged "illegal interrogation" conducted by police without being mirandized. Alternatively, defendant requests that a Huntley hearing be held to determine any disputed issue(s).
The People oppose this branch of defendant's motion. They argue that all of defendant's oral statements to police were legally obtained because he was lawfully arrested based upon the circumstances. The People reject defendant's premise that he had to be promptly mirandized as soon as Deputy Benjamin-Lam encountered him in his vehicle since police are generally permitted to seize a motorist and ask general investigatory questions, before issuing Miranda rights. The People thus advance that defendant's seizure at that time by Deputy Benjamin-Lam constitutes a noncustodial investigative inquiry in connection with a suspected motorist driving while impaired, and the police officers' question(s) did not need to be preceded by Miranda warnings. Additionally, the People contend that Miranda warnings are not required for police administering standardized field sobriety tests since they do not reveal a person's subjective knowledge or thought processes, but rather, exhibit a person's degree of physical coordination for observation by police officers.
It is well settled that a suppression motion "must contain sworn allegations of fact" by defendant which, if true, would warrant suppression (People v Bryant, 8 NY3d 530, 533 [2007]; see CPL 710.60 [1]; People v Mendoza, 82 NY2d, 422-429 [1993]). A court may summarily deny a motion to suppress if the defendant fails to allege a proper legal basis for suppression or if the "sworn allegations of fact do not as a matter of law support the ground alleged" (CPL 710.60 [3] [b]). "The sufficiency of the factual allegations should be (1) evaluated by the face of the pleadings, (2) assessed in conjunction with the context of the motion[,] and (3) evaluated by defendant's access to information" (People v Bryant, 8 NY3d at 533, quoting People v Mendoza, 82 NY2d at 426; see People v Lopez, 5 NY3d 753, 754 [2005]; People v Guzman, 153 AD3d 1273, 1276-1277 [2d Dept 2017]). In ruling on a motion to suppress evidence, the court 'is required to grant a hearing if the defendant 'raise[s] a factual dispute on a material point[,] which must be resolved before the court can decide the legal issue' of whether evidence was obtained in a constitutionally permissible manner" (People v Lambey, 176 AD3d 1232, 1234 [2d Dept 2019], quoting People v Burton, 6 NY3d 584, 587 [2006]; see People v Gruden, 42 NY2d 214, 215 [1977]).
A CPL 730.10 "notice must be served within [15] days after arraignment" (CPL 710.30 [2]). "[T]he purpose of CPL 710.30 is to inform a defendant that the People intend to offer evidence of a statement to a public officer at trial so that a timely motion to suppress the evidence may be made" (People v Rodney, 85 NY2d 289, 291-292 [1995]).
"The CPL 710.30 notice requirements serve to 'facilitate a defendant's opportunity to challenge before trial the voluntariness of statements made by a defendant,' and, in furtherance of that end, the People are required to serve notice of their intent to offer such evidence within 15 days of arraignment and before trial'" (People v McCray, 53 Misc 3d 19, 23 [App Term, 2d Dept, 11th & 13th Jud Dists 2016], lv denied 28 NY3d 1125 [2016] [internal brackets omitted], [*13]quoting People v Lopez, 84 NY2d 425, 428 [1994]). A CPL 710.30 "notice must be served within [15] days after arraignment" (CPL 710.30 [2]). "[T]he purpose of CPL 710.30 is to inform a defendant that the People intend to offer evidence of a statement to a public officer at trial so that a timely motion to suppress the evidence may be made" (People v Rodney, 85 NY2d 289, 291-292 [1995]).
To that end, the general purpose of a Huntley hearing is for the court to review evidence in determining whether statements made by defendant to law enforcement are admissible at trial (see People v Huntley 15 NY2d 72, 78 [1965]). A Huntley hearing is mandatory even if the statement is used solely for impeachment purposes (see People v Clemons, 166 AD2d 363, 365 [1st Dept 1990]; cf. People v Maerling, 64 NY2d 134, 142 [1984]; see also People v Ashley, 15 Misc 3d 80, 82 [App Term, 2d Dept, 9th & 10th Jud Dists 2007], lv denied 8 NY3d 863 [2007] ["while oral statements which have been suppressed pursuant to CPL 710.30 may not be used as evidence-in-chief, they may be used for the purpose of impeaching the testimony of a defendant during cross-examination and on rebuttal"]).
Here, defendant seeks suppression of the various statements that he made to police based on the police belatedly mirandizing him; or, alternatively, he requests a Huntley hearing for a determination in this regard. Contrary to the People's contention, the Court finds that defendant properly requested a Huntley hearing in his omnibus motion papers by sufficiently raising the issues at the forefront of his claim relative to his oral statements to police.
"[A] motion to suppress a statement as involuntary need not be supported by sworn allegations of fact" (People v Riley, 303 AD2d 1045, 1045 [4th Dept 2003], lv denied 3 NY3d 741 [2004] [internal quotation marks, ellipses, and citation omitted]; see CPL 710.60 [1], [3]; see also CPL 60.45 [2] [b] [ii]). As explained above, this Court may — but is not required to — summarily deny that branch of defendant's motion seeking to suppress all statements made to police (see CPL 710.30 [3]; see People v Mendoza, 82 NY2d at 429-430). While defendant's motion papers do not specifically refer to any particular oral statement which he made to law enforcement or indicate what statement, if any, were involuntarily obtained by police, the more prudent course here would be to grant a Huntley hearing for a definitive ruling to explore those issues (see People v Mendoza, 82 NY2d at 430; cf. People v Wright, 256 AD2d 643, 645-646 [3d Dept 1998], lv denied 93 NY2d 880 [1999]).
The record reflects here that the People filed the requisite notice under CPL 710.30 on July 30, 2025 — within the statutory timeframe to do so. Defendant quarrels with the People's view that he was merely subjected to a roadside investigation after a traffic stop, whereby police were permitted to engage in a noncustodial investigatory inquiry evoking potentially incriminating responses from him — without having issued him his Miranda warnings.
Well-established precedent dictates that Miranda warnings are necessary when a defendant is subject to custodial interrogation (see People v Paulman, 5 NY3d 122, 129 [2005]; People v Berg, 92 NY2d 701, 704, [1999]). In other words, "Miranda warnings must be given when the elements of police custody and interrogation are present" (People v Torres, 172 AD3d 758, 760 [2d Dept 2019] [internal quotation marks and citations omitted).
"The Miranda rule protects the privilege against self-incrimination and, because the privilege applies only when an accused is compelled to testify, the safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation" (People v Paulman, 5 NY3d 122, 129 [2005] [internal quotation marks and citation omitted]). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any [*14]wrongdoing would have believed that he or she was not free to leave" (id. at 129; see People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]).
"A court evaluating whether an individual was in custody must assess the circumstances existing when the challenged statements were made, considering such factors as the location, length and atmosphere of the questioning, whether police significantly restricted defendant's freedom of action, the degree of defendant's cooperation, and whether the questioning was accusatory or investigatory" (People v Moore, 162 AD3d 1123, 1125 [3d Dept 2018] [internal quotation marks and citation omitted]; see People v Casiano, 240 AD3d 1212, 1214 [4th Dept 2025]). Of import, the People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements to police were voluntary (see People v Guilford, 21 NY3d 205, 208 [2013]).
"In deciding whether a defendant was in custody before receiving Miranda warnings, the subjective beliefs of the defendant are not to be the determinative factor. Nor does the determination turn on the subjective intent of the police officer. Rather, the test is what a reasonable person, innocent of any crime, would have thought had he [or she][ been in the defendant's position. The term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (People v Torres, 172 AD3d at 760 [internal quotation marks and citations omitted]).
A general rule under Miranda and its progeny is that a "temporary roadside detention pursuant to a routine traffic stop" does not qualify as custodial or a defendant being in custody within the meaning of Miranda (People v Williams, 81 AD3d 993, 993 [2d Dept 2011] [internal quotation marks and citation omitted], lv denied 16 NY3d 901 [2011]; see Pennsylvania v Bruder, 488 US 9, 11 [1988]). A police officer may engage in a "'reasonable initial interrogation attendant' to the traffic stop . . . [that] is 'merely investigatory'" (People v Williams, 81 AD3d at 993, quoting People v Mathis, 136 AD2d 746, 747 [2d Dept 1988], lv denied 71 NY2d 899 [1988]).
Said differently, "[a] temporary roadside detention for the investigation of traffic-related matters, including suspected driving while intoxicated offenses, are generally non-custodial in nature and encompass limited questioning appropriate to such investigations . . . without the necessity of the rendering and waiver of the Miranda warnings" (People v Mackenzie, 9 Misc 3d 129[A], 2005 NY Slip Op 51535[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2005], lv denied 5 NY3d 807 [2005]; see Berkemer v McCarty, 468 US 420, 436-437 [1984]; People v Parris, 26 AD3d 393, 394-395 [2d Dept 2006], lv denied 6 NY3d 851 [2006]). "Moreover, Miranda warnings are not required before the administration of performance tests (see People v Myers, 1 AD3d 382, 383 [2d Dept 2003], lv denied 1 NY3d 631 [2004]; see People v Hager, 69 NY2d 141, 142 [1987]).[FN8]

In this case, the answers to some critical questions are unclear from the sparse record; consequently, the Court is not in a position to make approximate findings of fact and conclusions of law on a limited record. But for now, the Court can conclude that Deputy Benjamin-Lam did not need to mirandize defendant upon her initial encounter with him in the middle of the roadway (see People v Williams, 81 AD3d at 993); and Deputy Deskin did not have to mirandize defendant before administering standardized field sobriety tests (see People v Myers, 1 AD3d at 383). But those conclusions do not settle all issues in connection with the accused's statements to police and whether he was timely and properly mirandized. Defendant claims that he was initially detained in custody by police as of 3:09 a.m., during which time additional police officers responded to the scene, he was handcuffed, sitting in a locked police car, asked several questions, and directed to perform field sobriety tests. Furthermore, defendant avers that Deputy Diskin asked him if he was refusing to undergo the field tests and advised him that he can refuse to take those tests. Defendant also relies on Deputy Weinberg's drug influence evaluation report which reflects that Deputy Benjamin-Lam issued him Miranda warnings at approximately 4:30 a.m.
Due to the disputed issues as to exactly when and how defendant was taken into custody by police, to the time of custodial interrogation, arrest, and Mirandization by police, a Huntley hearing is necessary to further flesh out those issues — being that there are no concessions by either side (see People v Mackenzie, 2005 NY Slip Op 51535[U] at *2; People v Ward, 176 Misc 2d 398, 401 [Sup Ct, Richmond County 1998]; see generally People v Johnson, 71 Misc 3d 131[A], *1-2 [App Term, 2d Dept, 9th & 10th Jud Dists 2021]; People v Mannix, 63 Misc 3d 131[A], *1 [App Term 2019]). For example, further inquiry is warranted as to whether any of defendant's statements made to the police officer during the arrest and prior to having received Miranda warnings were "spontaneous and not triggered by police questioning or other conduct which reasonably could have been expected to elicit a declaration from him" (People v Williams, 97 AD3d 769, 770 [2d Dept 2012], lv denied 19 NY3d 1106 [2012]).
The Court thus exercises its discretion here to conduct a Huntley hearing in this matter. Therefore, defendant's motion to suppress oral statements alleged to have been made by him, as contained in the People's 710.30 notice, is granted solely to the extent that a hearing on the motion will take place prior to trial (see CPL 710.60 [4]).
III. Defendant's Motion for a Sandoval Hearing & 
Molineux MaterialNext, defendant moves for a Sandoval hearing as to claimed or alleged vicious, criminal, or immoral acts, conduct, offenses, or convictions attributable to him insofar that such could be used to impeach his credibility if he elects to testify at trial (see People v Sandoval, 34 NY2d 371, 375 [1974]. He also requests a Molineux hearing vis-à-vis any prior conviction or uncharged crime(s) which could be used adversely against him (see People v Molineux, 168 NY 264, 293 [1901]; People v Ventimiglia, 52 NY2d 350, 359-360 [1981]).
This branch of defendant's motion is granted. The Court shall conduct a joint Sandovali>/Molineux/Ventimiglia hearing before the commencement of trial in order to balance the probative value and prejudicial nature of any such proof (see People v Sandoval, 34 NY2d at 375; People v Lee, 129 AD3d 1295, 1297-1298 [3d Dept 2015], lv denied 27 NY3d 1001 [2016]). In the event the People wish to make a Molineuxi>/Ventimiglia application regarding defendant's prior bad acts, it must be filed no later than 30 days before the trial date (cf. CPL [*15]245.10 [b]; 245.20 [3]).
Within thirty (30) days from the date of this decision and order, the People shall notify and provide to defendant, in compliance with CPL article 245, a copy of defendant's summary case history in the DCJS, and any other documents showing additional criminal convictions, if such has yet to be turned over. Additionally, the People shall notify defense counsel of all specific instances of defendant's alleged prior uncharged criminal, vicious, or immoral conduct of which the People have knowledge and intend to use at trial for purposes of impeaching defendant's credibility. Such notification shall be made in full compliance with CPL article 245.
IV. Discovery RequirementsAs we well know, the discovery requirements set forth in CPL article 245 must be complied with in full. Generally, where the evidence is not in the exclusive control of the prosecution and may be readily accessible to the defendant, then the People do not have a duty to produce same to the defendant (see generally Giles v Maryland, 386 US 66, 80 [1967]). The People, however, have a continuing obligation to disclose and provide defendant with any material evidence already in their possession which is favorable to him, and if withheld, would deprive him of a fair trial — as is constitutionally mandated by Brady v Maryland (373 US 83 [1963]), its progeny, and CPL article 245.
Crucially, even a delay of providing discovery does not mean that defendant will never have access to the subject disclosure in preparing for trial, insomuch as he is still entitled to receive Rosario, Brady, and Giglio material; and, if need be, have a meaningful opportunity to use any exculpatory evidence (see People v Griggs, 180 AD3d 853, 855 [2d Dept 2020]; People v Hines, 132 AD3d 1385, 1386 [4th Dept 2015], lv denied 26 NY3d 1109 [2016]). The People are directed to furnish same to the defense as soon as possible. To whatever extent material that is discoverable pursuant to CPL article 245 has not already been provided by the People, such discovery, including both Brady and Rosario material, shall be provided to defendant forthwith (see Brady v Maryland, 373 US at 88; People v Rosario, 9 NY2d 286, 289-291 [1961]). Insofar he requests impeachment information to attack the credibility of the prosecution's witnesses, including law enforcement members, the People are obligated to promptly provide any such Brady and Rosario material to defendant.
Here, the record reflects that the People filed their certificate of compliance (hereinafter COC) in connection with this case on September 26, 2025 (see CPL 245.50 [1]).[FN9]
Because the People are entitled to reciprocal discovery, defendant recently filed his COC on October 29, 2025. Like the People, defendant, too, has a continuing duty to disclose and file supplemental COCs as may be necessary (see CPL 245.20 [4]; 245.50 [2]; 245.60).
If a party has a particularized reason to believe that there remains any outstanding discovery which they have yet to receive, counsel for defendant shall promptly contact the [*16]prosecutor handling this case. If there are unresolved discovery issues, defense counsel shall contact the court to request a conference to address outstanding issues. Should a party have sufficient reason to believe, in good faith, that they have not received particular discovery to which they are entitled, they are so advised that they can later move for an order for applicable relief under CPL 245.80 (see generally CPL 245.35 ["Court ordered procedures to facilitate compliance"]).
As for the presentation of expert witnesses and disclosures related to expert opinion evidence, counsel are reminded, and defendant is so advised, that expert disclosure is automatic and must be made in compliance with CPL 245.20.
a. Defendant's Motion to Strike the Prosecution's COC and Statement of Readiness as IllusoryAs far as discovery, defendant moves to strike the People's COC as invalid and their statement of readiness (hereinafter SOR) as illusory. His argument in this respect is predicated on the responding officers sporadically muting their body-worn camera recorders at certain times when, for instance, the officers were searching his vehicle and engaging in back-and-forth discussions among themselves. Defendant surmises that the muted audio portions from the body-worn camera recordings constitutes "missing evidence" which may be favorable to him. After closer scrutiny of defendant's moving and reply papers, the Court does not discern that defendant is making an affirmative request for the People to turn over the audit trails created by police body-worn cameras. Briefly, audit trails constitute metadata since they are reports of data and notes for body worn camera files (see People v Ballard, 82 Misc 3d 403, 408-409 [Crim Ct, Queens County 2025]).[FN10]

As a general matter, the filing of COCs should be done in good faith and not as means of a gamesmanship, delay tactics, or to gain a strategical advantage. A COC "must genuinely certify compliance" and should not be filed "piecemeal" (People v Vargas, 76 Misc 3d 646, 647 [Crim Ct, Bronx County 2022]).[FN11]

As for the merits, "CPL 245.50 (3) states, in relevant part, that "[a]bsent an individualized finding of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial for purposes of [CPL 30.30] until it has filed a proper certificate pursuant to [CPL 245.50 (1)].'" "CPL 30.30 (5) reiterates that requirement, providing, in relevant part: '[a]ny statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of CPL 245.20'" (People v Brown, 214 AD3d 823, 825 [2d Dept 2023] [brackets omitted]).
"In order to be deemed ready for trial, the People must now file a certificate of discovery compliance, indicating that they complied with all discovery obligations enumerated in CPL 245.20" (People v Popko, 71 Misc 3d 1210[A], *2 [Crim Ct, Queens County 2021]). "A COC serves only one practical purpose: it is a necessary prerequisite to a valid [SOR] under CPL 30.30. The sole condition precedent to the prosecutor's ability to file a COC is the discovery of all material considered automatic discovery" (People v Haymon, 71 Misc 3d 1203[A], *1 [Co Ct, Albany County 2021] [internal quotation marks, brackets, and citations omitted]).
"To be effective, a [SOR] must be communicated at a time when the People are truly ready to proceed. A [SOR] at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock" (People v McCarthy, 146 AD3d 983, 983-984 [2d Dept 2017], lv denied 29 NY3d 1034 [2017] [internal quotation marks, ellipses, and citation omitted]). "The People's [SOR] is presumed to be correct, 'in the absence of proof that the readiness statement did not accurately reflect the People's position'" (id. at 984 [internal brackets omitted], quoting People v Carter, 91 NY2d at 799).[FN12]

Contrary to defendant's contention, the Court finds that the People filed their COC "in good faith and reasonabl[y] under the circumstances" (CPL 245.50 [1]) — accompanied with their SOR therein, which is not illusory. The People's COC contains their SOR on the face of the document. Thus, "[t]he People's statement of readiness is presumed to be correct, 'in the absence of proof that the readiness statement did not accurately reflect the People's position'" (People v McCarthy, 146 AD3d 983, 984 [2d Dept 2017], lv denied 29 NY3d 1034 [2017], quoting People v Carter, 91 NY2d at 799).
The People's off-calendar announcement of readiness also appears to be made in good faith, reflecting an actual present state of readiness (see People v Brown, 28 NY3d 392, 406 [2016] ["the defendant bears the ultimate burden of demonstrating that a statement [of readiness] is illusory"]). Based on the motion papers and the circumstances presented, the Court finds that the People's SOR is presumed to be valid in view of the government's representations.
The People are correct in pointing out the defense's noncompliance with CPL 245.50 (4) (c), amended as of August 2025, insofar as that statute now directs the defense to file an affirmation. Specifically, that statute states, in pertinent part, that "any challenges to a certificate of compliance . . . shall be accompanied by an affirmation by the moving party that, after the filing of the opposing party's certificate of compliance, such moving party timely conferred in good faith or timely made good faith efforts to confer with the opposing party regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached" (emphasis added).[FN13]

"Subsequent iterations of CPL 245.50 (4) (as amended by L 2022, ch 56, part UU, subpart D, § 1 [eff May 9, 2022], and L 2025, ch 56, part LL, § 4 [eff Aug. 7, 2025]) place affirmative obligations upon a defendant when challenging the People's COC" (People v Mazelie, —, AD3d —, —, 2025 NY Slip Op 05849, *3 n 5 [3d Dept 2025] [brackets omitted] [emphasis added], quoting CPL 245.50 [4] [c], as amended by L 2025, ch 56, part LL, § 4 [eff Aug. 7, 2025]).
Here, defense counsel did not file an affirmation with respect to the mandates of 245.50 (4) (c). The People assert that no such affirmation was filed. Defendant does not dispute as much. Any challenge to the People's COC now must include an affirmation that the defense "timely conferred in good faith" or "timely made good faith efforts to confer with" the prosecution "regarding the specific and particularized matters forming the basis for" the challenge, and that such efforts to resolve the issues raised "were unsuccessful" (id.).
The Court finds that defendant's motion to strike the COC is procedurally improper; however, this branch of his motion is denied because the People have demonstrated due diligence and good faith in fulfilling their discovery obligations in relation to the police body-worn camera recordings. Defendant timely raised the issue on this motion since the People filed their COC on September 26, 2025, and defendant filed this omnibus motion shortly thereafter on October 1, 2025, wherein he squarely requests to invalidate the People's COC. Under these circumstances, the Court determines that the defense, albeit improperly, raised a direct challenge to the COC.
Turning to the merits of the defendant's challenge to the People's COC, the Court finds it to be unavailing. Defendant's contentions that the muted portions of the body-worn camera recordings of the responding deputies, during which they converse with one another and not with him, constitute necessary discoverable evidence which must be turned over to the defense, and the People's failure to provide those muted portions constitutes nondisclosure, are without merit. Defense counsel's reference to a prior case — involving a different individual defendant and entirely different charges — is disanalogous to the present matter before this Court. As noted by the People, the cases relied on by defendant in support of his contentions, which are referenced in his moving papers, stand for very different propositions.
The People contend that the deputies were merely "conferencing" amongst themselves in performing their official duties, without defendant's involvement, when they muted their body-[*17]worn camera recorders. Also, the People point out that the deputies did not mute themselves when directly speaking to defendant.
Defendant's contentions that the muted portions of the body-worn camera recordings constitute "lost or destroyed evidence" and that the deputies involved should have their audio activated at all times on the body-worn camera are unpersuasive. Surely, the deputies can be examined at trial about the contents of their conversations when their body-worn camera audio was muted. And as the People also note, defendant does not advance a claim that any audio by the deputies was muted when the deputies were directly speaking or interacting with him at the scene.
Even with that said, the Court can easily dispense with defendant's argument concerning the purported nondisclosure of the missing audio from the deputies' body-worn cameras. If, as Benjamin-Lam's bodycam recording shows, that the audio was briefly muted when the deputies conversed only among themselves, then that means that the audio itself during those muted portions was not captured or recorded. So, there is no plausible way for the People to obtain and turn over something which does not exist. Notably, defendant advances no argument that the missing audio portion(s) are favorable to him in any respect. The bodycam video recording itself is helpful to illuminate the deputies' actions in connection with the incident in question. Also, the body of caselaw on this subject reveals that no court in a criminal case has explicitly ordered the prosecution to turn over portions of muted audio recordings that was not captured/recorded on police body-worn cameras (see generally Forsyth v City of Rochester, 207 AD3d 1236, 1236-1240 [4th Dept 2022]; People v J.M.W., 83 Misc 3d 1289[A], *3-4 [Sup Ct, Kings County 2024]; People v Rivera, 81 Misc 3d 1202[A], *3 [Crim Ct, Queens County 2023]; People v Torres, 79 Misc 3d 1204[A], *5 [Crim Ct, Queens County 2023]; People v Brock, 58 Misc 3d 1202[A], *4 [Sup Ct, Monroe County 2017]).
Therefore, the Court concludes that under the circumstances of this case, the People satisfied their discovery requirement so long as they turn over the full, unedited recordings from the police body-worn camera(s). Where the entire encounter with defendant is recorded on a police body-worn camera and disclosed to the defense, such supports a finding of due diligence on the part of the prosecution in fulfilling their discovery obligations in this case. Accordingly, defendant's motion to invalidate the People's COC on such ground is denied (see People v Villota, 83 Misc 3d 1219[A], *4 [Sup Ct, Queens County 2024])
In reviewing the parties' motion papers, the court file, and utilizing the factors set forth in CPL 245.50 (5), the Court concludes that the People exercised good faith and due diligence, and that their COC is valid and that their SOR is not illusory. Therefore, that branch of defendant's motion to strike the People's COC and deem the People's SOR as illusory is denied (see generally People v Santiago, 87 Misc 3d 1221[A], 2025 NY Slip Op 51653[U], *2-6 [Crim Ct, New York County 2025]; People v Rhoomes, 86 Misc 3d 1259[A], *4 [Crim Ct, Kings County 2025]).
V. Defendant's Application Seeking Leave to File Additional MotionsLastly, defendant seeks leave to file additional future motions should newly discovered facts or information come to light. The People oppose this application absent a legally sufficient reason to occasion further motion practice. Upon due consideration, the Court grants, in part, this branch of defendant's motion for leave to file additional motions as may be absolutely necessary. [*18]CPL 255.20 (3) specifically sets forth the circumstances under which motions may be renewed or filed notwithstanding provisions of time or inclusion in the initial omnibus motion. Indeed, this Court could exercise its discretion to "entertain and dispose of the motion on the merits . . . in the interest of justice[] and for good cause" (CPL 255.20 [3]; see People v Hughes, 22 NY3d 44, 49 [2013]; People v Davydov, 144 AD3d 1170, 1172 [2d Dept 2016]; People v Huang, 248 AD2d 73, 76 [1st Dept 1998]). Notwithstanding, while defendant wishes to reserve his right to file another motion in the future, he is cautioned that such a prospective motion must not be based upon grounds that he could have easily raised here — which may well result in summary denial. Further, any such motion shall be promptly filed by defendant as soon as practicable without undue delay.
VI. The TrialFinally, defendant requests that any pretrial hearings in this matter be held sufficiently in advance of trial in order to allow ample time for transcription of the pretrial hearing minutes (see People v Sanders, 31 NY2d 463, 467 [1973] [defendant "shall . . . make his request for a transcript of the minutes of any pretrial hearing prior to its conclusion"]; see also People v Coleman, 81 NY2d 826, 927 [1993]). The People do not squarely answer such request in their response papers. Accordingly, the foregoing branch of defendant's motion is granted without opposition.
The trial shall commence with jury selection on a date to be selected by the Court. It will continue day to day until completed. Counsel must be adequately prepared for the trial prior to its commencement. The Clerk of the Court shall notify counsel of the date that the trial shall commence. Pursuant to the provisions of 22 NYCRR 125.1 (g), the trial date will not be adjourned (see People v Colasanto, 70 Misc 3d 133[A], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2020]). Counsel and defendant are further advised that this case may be subject to advancement if the Court's trial calendar so permits.
To the extent not specifically mentioned herein, the parties' remaining contentions have been evaluated and are without merit. Any other relief requested that is not squarely addressed herein is either rendered academic or denied based on this decision. Accordingly, it is hereby:
Ordered that the omnibus motion of defendant STEPHEN WASHINGTON (Mot. Seq. No. 1), is granted in part and denied in part, as is more fully set forth herein; and it is further
Ordered that the Court shall schedule and conduct a Huntley hearing in this case prior to trial; and it is further
Ordered that if the People endeavor to make a Molineuxi>/Ventimiglia application, the People shall file an appropriate written application in this regard no later than thirty (30) days before the trial date; and the Court shall conduct a combined Sandovali>/Molineux/Ventimiglia hearing prior to the commencement of trial; and it is further
Ordered that the defendant and the attorneys are directed to personally appear on Wednesday, November 26, 2025, at 9:30 a.m.,[FN14]
for a conference and further proceedings thereon.
The foregoing constitutes the opinion, decision, and order of this Court.
Dated: November 24, 2025Carmel, New YorkE N T E R:Hon. Anthony R. MoléJudge of the County Court

Footnotes

Footnote 1:Appended to the indictment is an information that defendant has a prior misdemeanor conviction in 2022, upon a guilty plea, of driving while ability impaired by drugs (see generally Vehicle and Traffic Law § 1193 [1] [c] [i] [A]).
Footnote 2:PCP is a mind-altering, "dissociative" illicit drug that may lead to hallucinations (Phencyclidine [PCP]; https://www.drugs.com/phencyclidine.html [last accessed Nov. 19, 2025]). 

Footnote 3:Deputy Benjamin-Lam's body-worn camera recording was transferred to a USB flash drive and admitted into evidence as grand jury exhibit no. 1.

Footnote 4:Of note, the Court of Appeals granted the defendant in People v Dondorfer (235 AD3d 71 [4th Dept 2024], lv granted 43 NY3d 944 [2025]) leave to appeal (see id.). Shortly thereafter, the defendant-appellant in Dondorfer was assigned appellate counsel to render a legal defense (43 NY3d 978 [May 15, 2025]). So, the Court of Appeals may likely decide a critical issue that possibly could affect these proceedings.
Footnote 5:In Caden N., the Third Department defined the term "impaired" in the context of drug consumption in accordance with the heightened standard that is generally applicable in cases of "intoxication" by alcohol (see People v Caden N., 189 AD3d 84, 89-91 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]; see People v Cruz, 48 NY2d 419, 428 [1979]). The Fourth Department in Dondorfer disagreed with that view by reasoning that "the term 'impaired' should be defined consistently across the Vehicle and Traffic Law — whether in the context of impairment by alcohol or in the context of impairment by drugs or a combination of drugs and alcohol" (People v Dondorfer, 235 AD3d at 73).

Footnote 6:Interestingly, the Court of Appeals also granted the defendant in People v Ambrosio (235 AD3d 1181 [3d Dept 2025], lv granted 43 NY3d 967 [2025]) leave to appeal with assigned appellate counsel (see id.; 44 NY3d 949 [Sept. 11, 2025]).

Footnote 7:Under Public Health Law § 3306, oxycodone is a schedule II controlled substance.

Footnote 8:For example, it has been previously held that a police officer's inquiries, the results of the regular field sobriety tests, and a negative alcosensor test would not cause a reasonable person innocent of any wrongdoing to believe that he or she was in custody (see e.g. People v Brown, 107 AD3d 1305, 1306 [3d Dept 2013], lv dismissed 23 NY3d 1018 [2014]).

Footnote 9:"CPL 245.50 (1) creates a . . . compliance mechanism" (People v Bay, 41 NY3d 200, 209 [2023]). "That provision directs the prosecution to 'serve upon the defendant and file with the court a certificate of compliance' when the prosecution, with several narrow exceptions, 'has provided the discovery required by [CPL 245.20 (1)]'" (People v Walker, 232 AD3d 1214, 1216 [4th Dept 2024], quoting CPL 245.50 [1]).

Footnote 10:Trial courts across the state appear to be divided on the issue of whether audit trails for police body-worn cameras are within the ambit of mandatory disclosure under CPL article 245 (see People, v Duhaney, 87 Misc 3d 1230[A], 2025 NY Slip Op 51737[U], *6 [Crim Ct, Bronx County 2025]; People v Hylton, 86 Misc 3d 1274[A], *5 [Crim Ct, Bronx County 2025]; People v Williams, 86 Misc 3d 1258[A], *2 [Co Ct, Tompkins County 2025]; People v Aca, 86 Misc 3d 1228[A], *5-6 [Crim Ct, New York County 2025]; People v Johnson, 85 Misc 3d 1238[A], *4 [Sup Ct, Kings County 2025]). Hence, the Court declines to reach that specific issue on this motion because defendant has not made an explicit request for the audit trails created by the deputies' body-worn cameras.
Footnote 11:A supplemental COC — should one be later filed by the People or defendant — is for discovery that the prosecution or defense "subsequently learns of" (CPL 245.60). It is not for discovery-related information or material that was already known by the party belatedly providing it (see CPL 245.50 [1-a]; see People v Figueroa, 76 Misc 3d 888, 896 n 2 [Crim Ct, Bronx County 2022]).

Footnote 12:"Where a defendant is charged with a felony, the People must be ready for trial within six months of the commencement of the criminal action, not including excludable periods" (People v Gutierrez, 209 AD3d 669, 670 [2d Dept 2022], lv denied 39 NY3d 986 [2022]; see CPL 30.30 [1] [a]; People v Barden, 27 NY3d 550, 553 [2016]). "Once the People announce that they are ready for trial, postreadiness delay is chargeable to them only 'when the delay is attributable to their inaction and directly implicates their ability to proceed'" (People v Lisene, 201 AD3d 738, 739 [2d Dept 2022], quoting People v Carter, 91 NY2d 795, 799 [1998]).
Footnote 13:That section further states "[f]or the purposes of this subdivision, the parties may confer informally, including but not limited to communication by email, telephone, or any other reasonable means" (CPL 245.50 [4] [c]).

Footnote 14:Counsel's appearances are reflected on page 22 herein.